2001 WY 116

**David REITER, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 00–129.

Supreme Court of Wyoming.

Dec. 6, 2001.

Representing Appellant: Sylvia L. Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Ryan R. Roden, Assistant Appellate Counsel.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; and M. Kristeen Hand, Student Intern.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1] Appellant, David Reiter, was charged with first-degree arson for starting a fire that destroyed the V.F.W. building in Casper. The district court ultimately entered an order finding that appellant was not criminally responsible for his conduct due to a mental illness, and committed appellant to the Wyoming State Hospital. In April 1999, appellant filed an application to be discharged from the state hospital, which the district court denied. Appellant appeals from the district court's order denying his application for discharge and an order deny-

ing his declaratory judgment motion, essentially arguing that Wyo. Stat. Ann. § 7–11–306(f) (LexisNexis 2001) unconstitutionally places the burden of proof on him in such a discharge proceeding. We affirm.

## ISSUES

[¶ 2]  Appellant raises the following issues on appeal:

ISSUE I

Whether the district court utilized an improper burden of proof when it concluded the W.S. § 7–11–306(f) proceeding?

ISSUE II

Whether the burden found within W.S. § 7–11–306(f) is unconstitutional and therefore violative of appellant's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution as well as Article 1 § 6 of the Wyoming Constitution?

ISSUE III

Whether the burden found within W.S. § 7–11–306(f) is unconstitutional and therefore violative of appellant's equal protection guarantees under Article 1 §§ 2, 7, 34 and 36 of the Wyoming Constitution?

ISSUE IV

Whether the burden found within W.S. § 7–11–306(f) is unconstitutional and therefore violative of appellant's equal protection guarantees under the Fourteenth Amendments [sic] to the United States Constitution?

The State of Wyoming, as appellee, phrases the issues in substantially the same manner.

## FACTS

[¶ 3]  On June 28, 1996, the Casper Fire Department responded to a fire at the V.F.W. building in Casper. Appellant was charged with first-degree arson for starting the fire and subsequently entered a not guilty by reason of mental illness or deficiency plea. Following an evaluation at the state hospital and a competency hearing, the district court found that appellant was incompetent to stand trial, but that appellant's competency might be restored with medication. Appellant remained at the state hospital.

[¶ 4]  In December 1996, the parties received a report from the state hospital that appellant had regained his competency to stand trial. On January 14, 1997, the parties appeared before the district court and agreed or jointly recommended that appellant be found not guilty by reason of mental illness or deficiency. The district court entered an order pursuant to Wyo. Stat. Ann. § 7–11–306(a) finding that appellant was not responsible for the alleged criminal conduct due to a mental illness, and that appellant was mentally ill and presented a substantial danger to himself or others. Appellant was committed to the state hospital pending further review under Wyo. Stat. Ann. § 7–11–306.

[¶ 5]  In April 1998, the state hospital filed an application to discharge appellant pursuant to Wyo. Stat. Ann. § 7–11–306(e).[1] After a hearing, the district court denied the application, finding that appellant remained mentally ill and continued to present a substantial risk of danger to himself or others.

[¶ 6]  In April 1999, appellant filed an application for discharge pursuant to Wyo. Stat. Ann. § 7–11–306(f) claiming that he no longer presented a substantial risk of danger to himself or others and that the referenced statute was constitutionally infirm. Appellant also filed a Motion for Declaratory Judgment seeking a declaration that the same statute was unconstitutional. The district

---

1.  Wyo. Stat. Ann. § 7–11–306(e) provides:

Following the first ninety (90) days of commitment to the Wyoming state hospital or other designated facility under this section, if at any time the head of the facility is of the opinion that the person is no longer affected by mental illness or deficiency, or that he no longer presents a substantial risk of danger to himself or others, the head of the facility shall apply to the court which committed the person for an order of discharge. The application shall be accompanied by a report setting forth the facts supporting the opinion of the head of the facility. Copies of the application and report shall be transmitted by the clerk of the court to the district attorney. If the state opposes the recommendation of the head of the facility, the state has the burden of proof by a preponderance of the evidence to show that the person continues to be affected by mental illness or deficiency and continues to present a substantial risk of danger to himself or others and should remain in the custody of the designated facility.

court denied the declaratory judgment motion, and after a December 1999, hearing, denied the application for discharge. In denying the discharge application, the district court found that appellant continued to be affected by his mental illness and remained a substantial risk of danger to himself or others.

## STANDARD OF REVIEW

[¶ 7] We recited the applicable standard of review in *V-1 Oil Co. v. State,* 934 P.2d 740, 742 (Wyo.1997):

> Issues of constitutionality present questions of law. We review questions of law under a *de novo* standard of review and afford no deference to the district court's determinations on the issues. *Anderson v. Bommer,* 926 P.2d 959, 961 (Wyo.1996). In reviewing a constitutionally based challenge to a statute, we presume the statute to be constitutional and any doubt in the matter must be resolved in favor of the statute's constitutionality. *Thomson v. Wyoming In Stream Flow Committee,* 651 P.2d 778, 789–90 (Wyo.1982). [Appellant] bears the burden of proving the statute is unconstitutional. *Pfeil v. Amax Coal West, Inc.,* 908 P.2d 956, 961 (Wyo.1995).

Normally, this burden is "heavy" in that appellant must " 'clearly and exactly show the unconstitutionality beyond any reasonable doubt.' " *Michael v. Hertzler,* 900 P.2d 1144, 1146 (Wyo.1995) (*quoting Miller v. City of Laramie,* 880 P.2d 594, 597 (Wyo.1994)). However,

> "that rule does not apply where a citizen's fundamental constitutional right, such as free speech, is involved. The strong presumptions in favor of constitutionality are inverted, the burden then is on the governmental entity to justify the validity of the [statute], and this Court has a duty to declare legislative enactments invalid if they transgress that constitutional provision."

*Michael,* 900 P.2d at 1146 (*quoting Miller,* 880 P.2d at 597).

> "This is true in situations involving the right of freedom of expression or thought, or of speech, or association, or of the press, or of religion. Under some authority, the usual presumption in favor of constitutionality is merely weaker where the statute arguably inhibits fundamental rights."

*Michael,* 900 P.2d at 1146 (*quoting Miller,* 880 P.2d at 597).

## DISCUSSION

### Wyoming Statutes

[¶ 8] The Wyoming legislature has established both criminal and civil processes for committing an individual due to his mental illness. Wyo. Stat. Ann. § 7–11–305(a) (LexisNexis 2001) allows a criminal defendant to enter a plea of "not guilty by reason of mental illness or deficiency...." The defendant is presumed to be mentally responsible, and bears the burden of proving by "the greater weight of evidence that, as a result of mental illness or deficiency, he lacked capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law." Wyo. Stat. Ann. § 7–11–305(b). If the defendant is successful, Wyo. Stat. Ann. § 7–11–306(a) and (d) state that the court, after entering a judgment of not guilty by reason of mental illness or deficiency, may commit the defendant to the state hospital or another facility if, based on the evidence at trial or at a separate hearing, the court finds that the defendant is affected by mental illness or deficiency, presents substantial risk of danger to himself or others, and is not a proper subject for release or supervision—under certain circumstances, the court may discharge the defendant outright, or under supervision. Wyo. Stat. Ann. § 7–11–306(b) and (c). Individuals committed pursuant to this process are "criminal acquittees."

[¶ 9] Wyo. Stat. Ann. § 25–10–110(g) and (j) (Michie 1997) allow an individual to be involuntarily hospitalized if a court or jury[2] finds by clear and convincing evidence that the proposed patient is mentally ill. "Men-

---

**2.** Wyo. Stat. Ann. § 25–10–110(g) provides that the proposed patient, his counsel, or the court under certain circumstances, may request that the initial civil commitment hearing be held before a jury.

tally ill" means a "physical, emotional, mental or behavioral disorder which causes a person to be dangerous to himself or others and which requires treatment[.]" Wyo. Stat. Ann. § 25–10–101(a)(ix) (Michie 1997). Individuals committed pursuant to this process are "civil committees."

[¶ 10]  The statutes also provide a procedural mechanism for discharging "criminal acquittees" and "civil committees." For "criminal acquittees," the statute at issue in this appeal provides, in pertinent part:

(f) Ninety (90) days after the order of commitment, any person committed to the designated facility under this section may apply to the district court of the county from which he was committed for an order of discharge upon the grounds that he is no longer affected by mental illness or deficiency, or that he no longer presents a substantial risk of danger to himself or others.  The application for discharge shall be accompanied by a report of the head of the facility which shall be prepared and transmitted as provided in subsection (e) of this section.  The applicant shall prove by a preponderance of the evidence his fitness for discharge.  An application for an order of discharge under this subsection filed within six (6) months of the date of a previous hearing shall be subject to summary disposition by the court.

(g) If the court, after a hearing upon any application for discharge, or application for modification or termination of release on supervision, under subsections (c) through (f) of this section, finds that the person is no longer affected by mental illness or deficiency, or that he no longer presents a substantial risk of danger to himself or others, the court shall order him discharged from custody or from supervision.  If the court finds that the person is still affected by a mental illness or deficiency and presents a substantial risk of danger to himself or others, but can be controlled adequately if he is released on supervision, the court shall order him released on supervision as provided in subsection (c) of this section.  If the court finds that the person has not recovered from his mental illness or deficiency and

presents a substantial risk of danger to himself or others and cannot adequately be controlled if he is released on supervision, the court shall order him remanded for continued care and treatment.

Wyo. Stat. Ann. § 7–11–306.  Its civil counterpart, Wyo. Stat. Ann. § 25–10–118(a) and (c) (Michie 1997), provide that under specified circumstances, a "civil committee" is entitled to a hearing to contest his continued hospitalization, and the hospitalization may continue only if the court, without a jury, finds by clear and convincing evidence that "continu[ed] hospitalization is justified. . . ." Interestingly, the statute does not specify which party bears the burden of proof.

## UNITED STATES SUPREME COURT CASES

[¶ 11]  The issues essentially arise from the application of two United States Supreme Court cases, *Foucha v. Louisiana,* 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) and *Jones v. United States,* 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983). In *Jones,* the District of Columbia Code, similar to Wyoming's statutes, allowed a criminal defendant to be acquitted by "reason of insanity" if he raised the defense and established his insanity by a preponderance of the evidence.  *Jones,* 463 U.S. at 356, 103 S.Ct. 3043.  If successful, the defendant would automatically be committed to a mental hospital.  *Id.* The District of Columbia Code provided that within fifty days (and if unsuccessful, every six months thereafter), a "criminal acquittee" was entitled to a judicial hearing to determine his eligibility for release, at which hearing he must demonstrate by a preponderance of the evidence that he was "no longer mentally ill or no longer dangerous to himself or others." *Id.* at 357, n. 3, 103 S.Ct. 3043.

[¶ 12]  The District of Columbia Code also provided a civil process whereby an individual could be committed to a mental hospital if the government proved by clear and convincing evidence to a court or jury that the individual was "mentally ill and likely to injure himself or others." *Id.* at 358–59, 103 S.Ct. 3043.  A "civil committee" was also entitled to a hearing to determine his eligibility for release, at which hearing he must prove by a preponderance of the evidence

that he was no longer mentally ill or dangerous. *Id.*

[¶ 13] Jones was arrested for attempted petit larceny, a misdemeanor. *Id.* at 359, 103 S.Ct. 3043. He suffered from schizophrenia, and the alleged crime was " 'the product of his mental disease.' " *Id.* at 359–60, 103 S.Ct. 3043. Accordingly, Jones entered a not guilty by reason of insanity plea, which the government did not contest. The trial court found him not guilty by reason of insanity and committed him to a mental hospital. *Id.* at 360, 103 S.Ct. 3043. Jones twice requested to be discharged, both of which requests were denied. By the second request, he had been committed for a period exceeding the maximum possible sentence for his criminal charge. *Id.*

[¶ 14] On appeal, Jones argued that the trial court's judgment of not guilty by reason of insanity was insufficient to establish his present mental illness and dangerousness. *Id.* at 362, 103 S.Ct. 3043. Because the government's interest in preventing a "criminal acquittee's" escape expires with the maximum possible criminal sentence for which the "criminal acquittee" could have received if convicted, he claimed that due process mandates that a "criminal acquittee" then be released or recommitted using the existing civil process, wherein the government bears the burden of proof by clear and convincing evidence and the "criminal acquittee" is entitled to request a jury trial. *Id.* at 363, 103 S.Ct. 3043. The United States Supreme Court rejected this argument, finding that (1) a judgment of not guilty by reason of insanity is "a sufficient foundation for commitment of an insanity acquittee for the purposes of treatment and the protection of society" automatically, and the legislature's conclusion that this judgment allowed an inference of continuing insanity and dangerousness until recovery is proven was not unreasonable. *Id.* at 364–66, 103 S.Ct. 3043; (2) based on the distinctions between "criminal acquittees" and "civil committees," the preponderance of the evidence standard used to commit a "criminal acquittee" did not violate due process. *Id.* at 367–68, 103 S.Ct. 3043; and (3) there is "no necessary correlation between severity of the offense and length of

time necessary for recovery" and the length of the "criminal acquittee's" hypothetical criminal sentence therefore is irrelevant to the purposes of his commitment. *Id.* at 369, 103 S.Ct. 3043. The United States Supreme Court held that:

> [W]hen a criminal defendant establishes by a preponderance of the evidence that he is not guilty of a crime by reason of insanity, the Constitution permits the Government, on the basis of the insanity judgment, to confine him to a mental institution until such time as he has regained his sanity or is no longer a danger to himself or society. This holding accords with the widely and reasonably held view that insanity acquittees constitute a special class that should be treated differently from other candidates for commitment. We have observed before that "[w]hen Congress undertakes to act in areas fraught with medical and scientific uncertainties, legislative options must be especially broad and courts should be cautious not to rewrite legislation...." *Marshall v. United States,* 414 U.S. [417] at 427 [94 S.Ct. 700, 38 L.Ed.2d 618 (1974)]. This admonition has particular force in the context of legislative efforts to deal with the special problems raised by the insanity defense.

*Jones,* 463 U.S. at 370, 103 S.Ct. 3043 (footnote omitted).

[¶ 15] In *Foucha,* Louisiana law allowed a "criminal acquittee" to remain committed indefinitely unless he proved that he was no longer dangerous, regardless of whether he remained mentally ill. *Foucha,* 504 U.S. at 73, 112 S.Ct. 1780. Foucha was charged with aggravated burglary and illegally discharging a firearm. *Id.* Doctors reported that Foucha was insane at the time he committed the offense. *Id.* at 73–74, 112 S.Ct. 1780. The trial court found Foucha not guilty by reason of insanity and committed him to a mental facility. *Id.* at 74, 112 S.Ct. 1780. Four years later, a report indicated that Foucha was no longer mentally ill, but that the same doctors who performed Foucha's pretrial examination could not " 'certify that he would not constitute a menace to himself or others if released' " due to an untreatable antisocial personality (not considered to be a mental

illness at the time) and his involvement in several altercations at the facility. *Id.* at 74–75, 112 S.Ct. 1780.

**[¶ 16]** Due process requires that the nature of an individual's commitment reasonably relate to the purpose for which the individual was committed; in other words, a "criminal acquittee" may be held as long as he is both mentally ill and dangerous, but no longer. *Id.* at 77, 79, 112 S.Ct. 1780; *Jones,* 463 U.S. at 368, 103 S.Ct. 3043. Because Foucha was no longer mentally ill (which the government conceded), and Louisiana law allowed a "criminal acquittee" who was not mentally ill to be detained indefinitely until he proved that he was no longer dangerous, it was unconstitutional to continue to confine Foucha as a "criminal acquittee." *Foucha,* 504 U.S. at 78–79, 112 S.Ct. 1780. Foucha's liberty interest required that in order to do so, another basis (i.e., civil commitment, criminal conviction, or some other form of constitutionally acceptable detention) must be utilized which affords the individual the protections inherent to due process. *Id.* at 78–83, 112 S.Ct. 1780. In a third section of the opinion, a plurality of the United States Supreme Court found that the Louisiana law similarly violated Foucha's equal protection rights. *Id.* at 84–86, 112 S.Ct. 1780.

**[¶ 17]** We note that Wyo. Stat. Ann. § 7–11–306(f) and (g) are consistent with *Foucha's* core holding in that a Wyoming "criminal acquittee" must be released if he proves, by a preponderance of the evidence, that he is no longer "affected by mental illness or deficiency, *or* that he no longer presents a substantial risk of danger to himself or others" and is not a proper subject for release or supervision. Wyo. Stat. Ann. § 7–11–306(f) (emphasis added). In other words, a "criminal acquittee" cannot be detained indefinitely unless he remains both mentally ill and dangerous; not based on dangerousness alone. Appellant's continued confinement in the instant case is based on the district court's dual finding that he remains mentally ill and presents a substantial risk of danger to himself or others, so *Foucha* is not violated in that regard. The primary issue on appeal concerns the constitutionality of placing the burden of proof on a "criminal acquit-

tee" in a Wyo. Stat. Ann. § 7–11–306(f) discharge proceeding.

### DUE PROCESS

**[¶ 18]** Appellant contends that placing the burden of proof on him in a Wyo. Stat. Ann. § 7–11–306(f) discharge proceeding violates the due process guarantees of the Fifth and Fourteenth Amendments to the United States Constitution and Wyo. Const. art. 1, § 6. Appellant relies on *Foucha* and cases from other jurisdictions in arguing that freedom from bodily restraint is a fundamental liberty, and substantive due process therefore mandates that the State bear the burden of proof, by clear and convincing evidence, in such a discharge proceeding.

**[¶ 19]** The pertinent provisions of the Fifth and Fourteenth Amendments to the United States Constitution and Wyo. Const. art. 1, § 6 essentially provide that no person shall be deprived of life, liberty or property without due process of law. An individual's liberty interest is not absolute:

> "[T]he liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly free from restraint. There are manifold restraints to which every person is necessarily subject for the common good. On any other basis organized society could not exist with safety to its members."

*Kansas v. Hendricks,* 521 U.S. 346, 356–57, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) (*quoting Jacobson v. Commonwealth of Massachusetts,* 197 U.S. 11, 26, 25 S.Ct. 358, 49 L.Ed. 643 (1905)). However, because commitment for any purpose " 'constitutes a significant deprivation of liberty that requires due process protection,' " a state must have " 'a constitutionally adequate purpose for the confinement.' " *Jones,* 463 U.S. at 361, 103 S.Ct. 3043 (*quoting Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) and *O'Connor v. Donaldson,* 422 U.S. 563, 574, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975)).

**[¶ 20]** Due process is both procedural and substantive. *Mills v. Reynolds,* 807 P.2d 383, 395 (Wyo.1991). The substan-

tive component of due process " 'bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them." ' " *Foucha*, 504 U.S. at 80, 112 S.Ct. 1780 (*quoting Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)). *See also Michael*, 900 P.2d at 1148. We have "largely" adopted "the two-tiered scrutiny employed by the federal courts in analyzing substantive due process and equal protection challenges." *White v. State*, 784 P.2d 1313, 1315 (Wyo. 1989).

> That is, where a statute affects a fundamental interest or creates an inherently suspect classification, the court must strictly scrutinize that statute to determine if it is necessary to achieve a compelling state interest. However, if the statute only affects ordinary interests in the economic and social welfare area, the court need only determine that it is rationally related to a legitimate state objective.

*Id.* at 1315.[3]

[¶ 21] A judgment of not guilty by reason of mental illness or deficiency establishes that the defendant committed " 'an act that constitutes a criminal offense' " and that he committed the act " 'because of a mental illness.' " *Foucha*, 504 U.S. at 76, 112 S.Ct. 1780 (*quoting Jones*, 463 U.S. at 363, 103 S.Ct. 3043). In *Jones*, the United States Supreme Court found that the legislature's determination that these "findings" were sufficient to justify automatically committing the "criminal acquittee" (without first holding a separate civil commitment hearing) was not "unreasonable" or unconstitutional; in effect, creating an "inference," or presumption, of "continuing" mental illness and dangerousness. *Jones*, 463 U.S. at 364–66, 103 S.Ct. 3043; *Foucha*, 504 U.S. at 76, 112 S.Ct. 1780. Considering the government's interests in treatment and the protection of society, it was constitutional, based on the insanity judgment, " 'to confine [the criminal acquittee] to a mental institution until such time as he has regained his sanity or is no longer a danger to himself or society.' " *Foucha*, 504 U.S. at 78, 112 S.Ct. 1780 (*quoting Jones*, 463 U.S. at 370, 103 S.Ct. 3043). The United States Supreme Court noted, however, that the "adequacy of the release standards" was not before it. *Jones*, 463 U.S. at 363, n. 11, 103 S.Ct. 3043.

[¶ 22] The Wyoming legislature has determined that once a court, based on the evidence at trial or at a separate hearing, finds that a "criminal acquittee" is affected by a mental illness and presents a substantial risk of danger to himself or others,[4] the "criminal acquittee" may be confined at the state hospital or another facility until the "criminal acquittee" (if he applies to be discharged) proves by a preponderance of the evidence that he is no longer mentally ill or dangerous. By doing so, the legislature has similarly recognized the inference or presumption of continuing mental illness and dangerousness, and placed the burden on the "criminal acquittee" to rebut it.

[¶ 23] Regardless of the applicable level of scrutiny, we perceive no difference in the nature or extent of the State's interests in treating a "criminal acquittee" and protecting society at the time a "criminal acquittee" is initially committed, which the United States Supreme Court found constitutionally adequate in *Jones* and *Foucha*, and a subsequent discharge proceeding pursuant to Wyo. Stat. Ann. § 7–11–306(f); therefore, in light of these interests, it is similarly not arbitrary, unreasonable, or unconstitutional to require the "criminal acquittee" to rebut the referenced presumption by proving he is no longer mentally ill or dangerous. Our reading of *Foucha* does not convince us otherwise. In *Foucha*, the United States Supreme Court held that because Foucha was not mentally ill, the government could no longer detain him as an insanity acquittee; at that point, the basis for Foucha's continued detention bore no relationship to the purpose for which he was committed. Instead, due process required that another constitutional-

---

**3.** *But see United States v. Deters*, 143 F.3d 577, 582–84 (10th Cir.1998), discussing the United States Supreme Court's lack of clarity regarding the level of scrutiny applicable to substantive due process issues.

**4.** Assuming also, of course, that the "criminal acquittee" is not suitable for release or supervision.

ly acceptable basis be utilized in order to continue Foucha's confinement. The United States Supreme Court did not expressly address the constitutionality of which party should bear the burden of proof in a "criminal acquittee" discharge proceeding, or what that burden should be. But where the basis for confining the "criminal acquittee" remains intact, the state may, pursuant to the aforementioned presumption, properly require the "criminal acquittee" to prove his eligibility for release.

[¶ 24] For these reasons, we conclude that requiring a "criminal acquittee" to rebut the inference or presumption of continuing mental illness and dangerousness by a preponderance of the evidence in a Wyo. Stat. Ann. § 7–11–306(f) discharge proceeding does not violate a "criminal acquittee's" state or federal due process guarantees. *See also Hartman v. Summers*, 878 F.Supp. 1335, 1341–44 (C.D.Cal.1995), *aff'd*, 120 F.3d 157 (9th Cir.1997); *People v. Parrish*, 879 P.2d 453, 457 (Colo.App.1994); *Hearne v. United States*, 631 A.2d 52, 53–54 (D.C.1993); *Nagel v. State*, 262 Ga. 888, 427 S.E.2d 490, 491–92 (1993), *cert. denied*, 528 U.S. 1006, 120 S.Ct. 502, 145 L.Ed.2d 388 (1999); *State v. Miller*, 84 Hawai'i 269, 933 P.2d 606, 610–12 (1997); *Green v. Commissioner of Mental Health and Mental Retardation*, 750 A.2d 1265, 1270–72 (Me.2000); *State v. Tooley*, 875 S.W.2d 110, 112–14 (Mo.1994); and *State v. Platt*, 143 Wash.2d 242, 19 P.3d 412, 415–17 (2001).

### EQUAL PROTECTION

[¶ 25] Appellant also asserts that placing the burden of proof on him in a Wyo. Stat. Ann. § 7–11–306(f) discharge proceeding violates his equal protection rights pursuant to the Fourteenth Amendment to the United States Constitution and Wyo. Const. art. 1, §§ 2, 7, 34 and 36. In particular, appellant contends that "civil committees" and "criminal acquittees" are similarly situated individuals who are treated differently in that the state bears the burden, by clear and convincing evidence, in "civil committee" discharge proceedings under Wyo. Stat. Ann. § 25–10–118, and the "criminal acquittee" bears the burden, by a preponderance of the evidence, in discharge proceedings pursuant to Wyo. Stat. Ann. § 7–11–306(f). According to appellant, because one's liberty interest is a fundamental right, we should apply strict scrutiny, which requires that the claimed disparate treatment be necessary to achieve a compelling state interest. Appellant further argues that the claimed disparate treatment in this case similarly fails to satisfy a rational basis review, in which the disparate treatment must bear a rational relationship to a legitimate state interest.

[¶ 26] The pertinent provisions of the Fourteenth Amendment to the United States Constitution and Wyo. Const. art. 1, §§ 2, 7, 34 and 36 essentially provide that one is entitled to equal protection under the law; in effect, " 'all persons similarly situated shall be treated alike, both in the privileges conferred and in the liabilities imposed.' " *Allhusen v. State By and Through Wyoming Mental Health Professions Licensing Bd.*, 898 P.2d 878, 884, 885–86 (Wyo.1995) (*quoting Small v. State*, 689 P.2d 420, 425 (Wyo. 1984) and *State v. Freitas*, 61 Haw. 262, 602 P.2d 914, 922 (1979)) (articulating Wyoming's equal protection analysis). In order to proceed with an equal protection analysis, appellant must first demonstrate that "criminal acquittees" and "civil committees" are indeed similarly situated, for the Equal Protection Clause " 'does not require things which are different in fact or opinion to be treated in law as though they were the same.' " *Skinner v. State of Okl. ex rel. Williamson*, 316 U.S. 535, 540, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (*quoting Tigner v. Texas*, 310 U.S. 141, 147, 60 S.Ct. 879, 84 L.Ed. 1124 (1940)); *see generally Ellett v. State*, 883 P.2d 940, 944 (Wyo.1994).

[¶ 27] We find that "criminal acquittees" and "civil committees" are not similarly situated individuals for equal protection purposes. In *Jones*, the United States Supreme Court stated that its holding "accords with the · widely and reasonably held view that insanity acquittees constitute a special class that should be treated differently from other candidates for commitment." *Jones*, 463 U.S. at 370, 103 S.Ct. 3043. Jones had argued that his initial commitment, even as a "criminal acquittee," would be constitutional

(based on due process or equal protection)[5] only if his insanity was first proven by clear and convincing evidence. *Id.* at 366–67, 103 S.Ct. 3043. The United States Supreme Court responded by pointing to "important differences" between "criminal acquittees" and "civil committees" that justified the different standards of proof, stating:

> The *Addington* Court expressed particular concern that members of the public could be confined on the basis of "some abnormal behavior which might be perceived by some as symptomatic of a mental or emotional disorder, but which is in fact within a range of conduct that is generally acceptable." [*Addington*] 441 U.S., at 426–427, 99 S.Ct. 1804.... In view of this concern, the Court deemed it inappropriate to ask the individual "to share equally with society the risk of error." *Addington*, 441 U.S. at, 427, 99 S.Ct. 1804. But since automatic commitment under § 24–301(d)(1) follows only if the *acquittee himself* advances insanity as a defense and proves that his criminal act was a product of his mental illness, there is good reason for diminished concern as to the risk of error. More important, the proof that he committed a criminal act as a result of mental illness eliminates the risk that he is being committed for mere "idiosyncratic behavior," *Addington*, 441 U.S. at, 427, 99 S.Ct. 1804. A criminal act by definition is not "within a range of conduct that is

generally acceptable." *Id.*, at 426–427, 99 S.Ct. 1804.

> We therefore conclude that concerns critical to our decision in *Addington* are diminished or absent in the case of insanity acquittees. Accordingly, there is no reason for adopting the same standard of proof in both cases. * * * The preponderance of the evidence standard comports with due process for commitment of insanity acquittees.

*Jones*, 463 U.S. at 367–68, 103 S.Ct. 3043 (footnotes omitted and emphasis in original).

[¶ 28] The United States Supreme Court has recognized "important differences" between "criminal acquittees" and "civil committees," and, at the initial commitment stage, has justified treating the two classes differently in the burden of proof, which party bears that burden of proof, and the resulting inferences once the burden of proof is satisfied. Considering also that a "criminal acquittee" has placed his mental illness at issue, proved it by a preponderance of the evidence, and is therefore deemed to have committed a criminal act (which implicates a bevy of additional considerations not commensurate with those akin to "civil committees"), we find that such "important differences" render a "criminal acquittee" dissimilar to a "civil committee" for equal protection purposes. *See generally Glatz v. Kort*, 807 F.2d 1514, 1522 (10th

5. Jones argued in the Court of Appeals that the aforementioned District of Columbia Code violated his equal protection rights. The United States Supreme Court noted that in Jones' appeal, his equal protection argument duplicated his due process argument, and the United States Supreme Court proceeded to analyze the issues under due process, because "if the Due Process Clause does not require that an insanity acquittee be given the particular procedural safeguards provided in a civil-commitment hearing under *Addington* [441 U.S. 418, 99 S.Ct. 1804], then there necessarily is - a rational basis for equal protection purposes for distinguishing between civil commitment and commitment of insanity acquittees." *Jones*, 463 U.S. at 362, n. 10, 103 S.Ct. 3043.

The United States Supreme Court did address one issue based solely on Jones' equal protection argument. According to Jones, equal protection mandated that he be provided a jury trial, the same right conferred to "civil committees," at the fifty-day discharge proceeding. *Id.* at 362, n.

10, 103 S.Ct. 3043. The United States Supreme Court stated:

> Because we determine that an acquittee's commitment is based on the judgment of insanity at the criminal trial, rather than solely on the findings at the 50–day hearing ... the relevant equal protection comparison concerns the procedures available at the criminal trial and at a civil-commitment hearing. We therefore agree with the Court of Appeals that the absence of a jury at the 50–day hearing "is justified by the fact that the acquittee has had a right to a jury determination of his sanity at the time of the offense."

*Id.* at 362–63, n. 10, 103 S.Ct. 3043 (*quoting Jones v. United States*, 432 A.2d 364, 373 (D.C. 1981), *cert. granted*, 454 U.S. 1141, 102 S.Ct. 999, 71 L.Ed.2d 292 (1982), *aff'd*, 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983)). In other words, "criminal acquittees" and "civil committees" were not treated disparately in that respect.

Cir.1986); *Hartman,* 878 F.Supp. at 1345–47; *Miller,* 933 P.2d at 612–15; *Green,* 750 A.2d at 1273 (recognizing "good argument" that the two groups are not similarly situated for equal protection purposes); and *Lidberg v. Steffen,* 514 N.W.2d 779, 784 (Minn. 1994) (the appellant's "history of dangerousness and his commitment as [mentally ill and dangerous]" mean that he is not similarly situated to someone "committed as [mentally ill]").

[¶ 29] A plurality of the United States Supreme Court in *Foucha* did find that Louisiana law "discriminates against Foucha in violation of the Equal Protection Clause of the Fourteenth Amendment." *Foucha,* 504 U.S. at 84–85, 112 S.Ct. 1780. The plurality in *Foucha* recognized that in *Jones,* it "established that insanity acquittees may be treated differently in some respects from those persons subject to civil commitment, but Foucha, who is not now thought to be insane, can no longer be so classified." *Foucha,* 504 U.S. at 85, 112 S.Ct. 1780. Accordingly, Louisiana law, without sufficient justification, allowed Foucha to be confined indefinitely based on dangerousness alone but did not "provide for similar confinement for other classes of persons who have committed criminal acts and who cannot later prove they would not be dangerous." *Id.* Aside from the United States Supreme Court's acknowledgement of its holding in *Jones,* the United States Supreme Court's equal protection analysis in *Foucha* does not impact our holding herein because Louisiana's unjustified disparate treatment was not based on Foucha's status as a "criminal acquittee"—the state conceded that he was no longer mentally ill.

**BURDEN OF PROOF APPLIED BY THE DISTRICT COURT**

[¶ 30] Appellant argues that the district court misstated the applicable burden of proof, citing the following excerpt from the district court's decision letter:

> The Court recognizes the heavy burden which Mr. Reiter must meet to gain Court acceptance of any release, but such burden is necessary for the protection of the public.

According to appellant, this statement is erroneous to a degree that we should either remand the case so the district court can reconsider the evidence utilizing the preponderance of the evidence standard or we should do so in the district court's stead.

[¶ 31] The district court was certainly versed in the applicable burden of proof. At the outset of the hearing on appellant's discharge application, counsel for appellant raised an issue regarding which party bore the burden of proof in that proceeding. The district court ruled that appellant bore the burden of proof "to establish his fitness for discharge, and he has to meet that by a preponderance of the evidence." In its December 17, 1999, decision letter denying appellant's discharge application, the district court stated that it had "reviewed the applicable statutes and the case law on the issues presented," and cited the pertinent statutory provisions, including that appellant " 'shall prove by a preponderance of the evidence his fitness for discharge.' " Wyo. Stat. Ann. § 7–11–306(f).

[¶ 32] We are unable to discern from the single statement isolated by appellant that the district court misstated or otherwise utilized an improper burden of proof. The isolated statement appears in a paragraph detailing appellant's "established history which indicates a strong tendency to cease his medication once he is released from medical treatment. Further, on each occasion, his relapse has resulted in increasingly violent criminal behavior." The district court then referred to evidence that appellant did not "fit within established statistical patterns," that, contrary to the norm, his violent behavior increased with age, and concluded that "any inference that [appellant] will continue his medication is pure speculation, and such speculation is inappropriate given the [appellant's] past history." In this context, the isolated statement would appear merely to refer to appellant's "heavy burden" in light of the evidence comprising such an "established history" and its resulting implications, rather than stating or applying an entirely different standard of proof. Even if we were inclined to review the district court's factual findings according to the preponderance standard, appellant does not present any cogent argu-

ment, aside from a legal discussion of the preponderance standard itself, regarding whether the district court's factual findings satisfy the preponderance standard.

[¶ 33] The district court's order denying appellant's discharge application and denying appellant's declaratory judgment motion are affirmed.