# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 100

### OCTOBER TERM, A.D. 2016

### October 18, 2016

CHESTER LOYDE BIRD,

Appellant
(Plaintiff),

v.

WYOMING BOARD OF PAROLE,
Daniel M. Fetsco, Executive Director, and
WYOMING DEPARTMENT OF
CORRECTIONS, Robert O. Lampert,
Director,

Appellees
(Defendants).

S-16-0105

*Appeal from the District Court of Laramie County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant:*
　　Chester L. Bird, *pro se*.

*Representing Appellees:*
　　Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy
　　Attorney General; James M. Causey, Senior Assistant Attorney General; Joshua C.
　　Eames, Assistant Attorney General.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]   Chester L. Bird is serving a sentence of life according to law for crimes he committed in the 1990s.  Mr. Bird filed a *pro se* complaint pursuant to the Declaratory Judgment Act, alleging various constitutional violations.  The district court dismissed Mr. Bird's claims, and he appealed.  We affirm.

## *ISSUES*

[¶2]   Mr. Bird presents a number of issues for our review.  Although the issues presented are not discretely listed, Mr. Bird discusses and presents argument on each issue listed below.  While we will not frame the issues for the parties, we do make some allowances for *pro se* litigants.  *Kelley v. Watson*, 2003 WY 127, ¶ 4, 77 P.3d 691, 692 (Wyo. 2003).

> 1.   Does Wyo. Stat. Ann. § 7-16-205(a)(i) violate Mr. Bird's equal protection rights by treating similarly situated prisoners differently without a rational relationship to a legitimate state interest?

> 2.   Does the Wyoming Department of Corrections' good time policy violate Mr. Bird's equal protection rights by treating similarly situated prisoners differently?

> 3.   Did the enactment of Wyo. Stat. Ann. § 7-16-205(a)(i) impliedly repeal Wyo. Stat. Ann. § 7-13-402(a)?

> 4.   Did the Wyoming Board of Parole violate the doctrine of separation of powers by enacting policies governing the commutation application procedure?

> 5.   Did the Wyoming Board of Parole violate Mr. Bird's due process rights by amending the commutation application procedure?

> 6.   Did the Wyoming Board of Parole's amendment to the commutation application procedure violate Mr. Bird's constitutional protection against *ex post facto* laws?

## *FACTS*

[¶3]   In the mid-90s, Mr. Bird was sentenced to two life sentences according to law, to run concurrently.  *Bird v. State*, 901 P.2d 1123, 1128 (Wyo. 1995).  On September 1, 2015, Mr. Bird filed a complaint against the Wyoming Board of Parole (WBOP) and the Wyoming Department of Corrections (WDOC) pursuant to the Declaratory Judgment Act.  Mr. Bird made a number of allegations, as set forth in the Issues section above.  In response to Mr. Bird's complaint, the defendants filed a combined motion to dismiss, arguing that Mr. Bird failed to state a claim for relief.  The district court granted the motion, and Mr. Bird timely filed his notice of appeal.

## STANDARD OF REVIEW

[¶4]   We sustain the dismissal of a complaint pursuant to W.R.C.P. 12(b)(6) "only if it shows on its face that the plaintiff [is] not entitled to relief under any set of facts." *Hochalter v. City of Gillette*, 2005 WY 125, ¶ 9, 120 P.3d 674, 677 (Wyo. 2005) (quoting *Darrar v. Bourke*, 910 P.2d 572, 575 (Wyo. 1996)).   The facts alleged in the complaint are deemed admitted and the allegations are viewed in the light most favorable to the complaining party. *Id.* "Dismissal is a drastic remedy, and is sparingly granted." *Id.*

## DISCUSSION

### I.   Does Wyo. Stat. Ann. § 7-16-205(a)(i) violate Mr. Bird's equal protection rights by treating similarly situated prisoners differently without a rational relationship to a legitimate state interest?

[¶5]   In 2010, the Wyoming legislature amended Wyo. Stat. Ann. § 7-16-205(a) by enacting a new paragraph which required that a portion of a prisoner's earnings be withheld and placed in a savings account, to be distributed to the prisoner upon release. The statute provides:

> Unless the prisoner is serving a sentence of death or life without the possibility of parole or is subject to mandatory savings under W.S. 25-13-107(b)(i), ten percent (10%) shall be credited to the prisoner's personal savings account within the correctional facility's trust and agency account, until the prisoner's account has a balance of one thousand dollars ($1,000.00).   Once the prisoner's personal savings account balance reaches one thousand dollars ($1,000.00), the income otherwise distributed to the prisoner's savings account under this paragraph shall be distributed to the prisoner as provided by paragraphs (ii) through (vi) of this subsection.   Funds in the prisoner's personal savings account shall be paid to the prisoner upon parole or final discharge[.]

Wyo. Stat. Ann. § 7-16-205(a)(i) (LexisNexis 2016 Supp.).   In *Nicodemus v. Lampert*, 2014 WY 135, 336 P.3d 671 (Wyo. 2014), we held that the mandatory savings requirement applied to prisoners serving a life according to law sentence, as the statutory language exempts only those serving life without parole or death sentences. *Id.* at ¶ 19, 336 P.3d at 675.   The case did not present, and we did not consider, whether the mandatory inmate savings provision violated the constitutional right of equal protection. Mr. Bird argues that a life sentence according to law and a life sentence without parole

are the same, and that Wyo. Stat. Ann. § 7-16-205(a)(i) violates equal protection because it treats similarly situated classes of prisoners differently.

[¶6]    The United States Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Equal protection requires that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Unlike the United States Constitution, the Wyoming Constitution does not include a single, express equal protection clause. *Hageman v. Goshen Cty. Sch. Dist. No. 1*, 2011 WY 91, ¶ 53, 256 P.3d 487, 503 (Wyo. 2011). Instead, it contains "a variety of equality provisions," *id.*, which we have said "offers more robust protection against legal discrimination than the federal constitution." *Allhusen v. State By & Through Wyo. Mental Health Professions Licensing Bd.*, 898 P.2d 878, 884 (Wyo. 1995); *see also* Wyo. Const. art. 1, §§ 2, 3, 34, art. 3, § 27. Despite the textual difference, "this Court uses the conventional federal equal protection analysis in the interpretation of the equality provisions of the Wyoming Constitution." *Hageman*, 2011 WY 91, ¶ 53, 256 P.3d at 503 (quoting *Newport Int'l Univ., Inc. v. State Dep't of Educ.*, 2008 WY 72, ¶ 15, 186 P.3d 382, 387 (Wyo. 2008)).

[¶7]    In an equal protection analysis, we begin by examining whether the classified groups alleged to be treated differently as a result of a governmental action are, in fact, similarly situated. *Reiter v. State*, 2001 WY 116, ¶ 26, 36 P.3d 586, 594 (Wyo. 2001). If not, there is no equal protection violation, and the claim must be dismissed. *Id.* However, if we find that two groups treated differently are similarly situated, then we must determine whether the challenged government action is rationally related to a legitimate state interest.[1] *City of Cleburne*, 473 U.S. at 440, 105 S.Ct. at 3254. If so, we uphold the governmental action; however, if not, the governmental action must be invalidated as violating equal protection.

[¶8]    The district court upheld the statute, finding that it "does not provide dissimilar treatment to similarly situated inmates." Equal protection "does not require things which are different in fact or opinion to be treated in law as though they were the same." *Reiter*, 2001 WY 116, ¶ 26, 36 P.3d at 594 (quoting *Skinner v. State of Okla. ex. rel. Williamson*, 316 U.S. 535, 540, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942)). However, in the context of a motion to dismiss, there was an insufficient basis to conclude that prisoners sentenced to life without parole and prisoners sentenced to life according to law are not similarly situated.

---

[1] When a classification is based on gender, a heightened standard of review is used: "A gender classification fails unless it is substantially related to a sufficiently important governmental interest." *City of Cleburne*, 473 U.S. at 441, 105 S.Ct. at 3255. Strict scrutiny is applied when a governmental action classifies by race, alienage, or national origin. These governmental actions "will be sustained only if they are suitably tailored to serve a compelling state interest." *Id.* at 440, 105 S.Ct. at 3254.

[¶9]     The United States Supreme Court has never precisely defined the meaning of the term "similarly situated," *Selsor v. Workman*, 644 F.3d 984, 1016 (10th Cir. 2011), and the circuit courts of appeal that have grappled with this question have not presented a uniformly applicable test to resolve this thorny issue.[2]   The Seventh Circuit has stated that the classified groups must be "identical in all relevant respects," *Srail v. Village of Lisle*, 588 F.3d 940, 945 (7th Cir. 2009), while the Tenth Circuit has used a less rigid approach, asserting that "the degree to which others are viewed as similarly situated [for equal protection analysis purposes] depends substantially on the facts and context of the case."  *Jennings v. City of Stillwater*, 383 F.3d 1199, 1214 (10th Cir. 2004).   The Eleventh Circuit has indicated that different groups must be "prima facie identical" to be similarly situated, *Grider v. City of Auburn*, 618 F.3d 1240, 1264 (11th Cir. 2010), and the Fourth Circuit has asserted that the "evidence must show an extremely high degree of similarity."  *Willis v. Town of Marshall*, 275 Fed. Appx. 227, 233 (4th Cir. 2008) (internal quotation marks and citation omitted).   The First Circuit has taken a more colloquial approach insisting that "apples should be compared to apples."  *Barrington Cove Ltd. P'ship v. Rhode Island. Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 8 (1st Cir. 2001).   While it is clear that the groups to be compared must be substantially similar "in relevant respects," *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 366 n.4, 121 S.Ct. 955, 963 n.4, 148 L.Ed.2d 866 (2001), we find that equal protection analysis must begin with determining the purpose of the challenged governmental action.  *Women Prisoners of District of Columbia Dep't of Corrections v. District of Columbia*, 93 F.3d 910, 954-55 (D.C. Cir. 1996) (Rogers, J. concurring in part and dissenting in part) ("Whether two people (or classes of people) treated differently by the government are similarly situated depends on the purpose for which the government is acting."); *see also Rostker v. Goldberg*, 453 U.S. 57, 77-79, 101 S.Ct. 2646, 2658-59, 69 L.Ed.2d 478 (1981) ("The purpose of registration was to prepare for a draft of combat troops. . . . [W]omen are excluded from combat. . . .   Men and women, because of the combat restrictions on women, are simply not similarly situated ***for purposes of a draft or a registration for a draft***." (emphasis added)); *Klinger v. Dep't of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994) ("The similarly situated inquiry focuses on whether the plaintiffs are similarly situated to another group for purposes of the challenged governmental action.").   It is only in rare situations that members of two classes will be similarly

---

[2] The difficulty of this analysis is reflected in the Eleventh Circuit's opinion in *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1203 (11th Cir. 2007):

> The central issue here is what degree of similarity is required for two entities to be considered "similarly situated."  Too broad a definition of "similarly situated" could subject nearly all state regulatory decisions to constitutional review in federal court and deny state regulators the critical discretion they need to effectively perform their duties.  Conversely, too narrow a definition of "similarly situated" could exclude from the zone of equal protection those who are plainly treated disparately and without a rational basis.

4

situated with respect to the purposes of all governmental actions. *Women Prisoners*, 93 F.3d at 954-955. Thus, we endeavor to determine the purpose of the governmental action in this case before embarking on a similarly-situated analysis. *Id.*

[¶10]   In *Nicodemus*, we recognized that the purpose of Wyo. Stat. Ann. § 7-16-205(a)(i) is to

> assure that an inmate who has been paroled or finally discharged from his sentence has funds to pay expenses until he can find employment or another source of legitimate revenue so that he is not tempted or forced to steal or commit other crimes to keep body and soul together.

*Id.*, 2014 WY 135, ¶ 4, 336 P.3d at 673. Mr. Bird argues that there is no real difference between prisoners serving life without parole and prisoners serving life according to law, and that Wyo. Stat. Ann. § 7-16-205(a)(i) therefore violates equal protection. Neither life prisoners nor life without parole prisoners may be considered for parole. Wyo. Stat. Ann. § 7-13-402(a) (LexisNexis 2015). The only distinction between the two sentences is the clemency for which each class is eligible. A prisoner serving life may have his sentence commuted by the governor and/or receive a pardon from the governor, at the governor's discretion. Wyo. Const. art. 3, § 53; Wyo. Stat. Ann. § 6-10-301(c) (LexisNexis 2015). A life without parole prisoner cannot have his sentence commuted, but may be eligible for a pardon at the governor's discretion. Wyo. Const. art. 3, § 53; Wyo. Stat. Ann. § 6-10-301(b) (LexisNexis 2015). The issue is therefore whether there is any discernible difference between the commutation of a sentence and a pardon with respect to the governmental purpose of ensuring that prisoners have funds when they are paroled or finally discharged. In *Nicodemus*, we recognized that "Nicodemus and others similarly situated have little hope of ever leaving the prison system, but we are compelled to conclude, based on the language of the statute, that the legislature intended for the Department of Corrections to maintain a fund for that remote contingency." *Id.*, 2014 WY 135, ¶ 19, 336 P.3d at 675-76. There is no basis for finding that the "remote contingency" of a commutation is in fact less remote than that of a pardon, and therefore we cannot conclude that the two categories of prisoners are not similarly situated.

[¶11] However, looking to the legislative purpose behind distinguishing between sentences of life without parole and life according to law, we find there is a rational basis for their different treatment. Life without parole sentences are reserved for the most egregious crimes. S*ee* Wyo. Stat. Ann. § 6-2-306(d) (LexisNexis 2015) (repeat sex offenders) and Wyo. Stat. Ann. § 6-2-101 (LexisNexis 2015) (first-degree murder). A pardon is a full release "from the legal consequences of a specific crime." 59 Am. Jur. 2d *Pardon and Parole* § 1 (2012). People found guilty of somewhat less egregious crimes may be sentenced to life according to law, which would make them eligible for commutation in addition to pardon. *See* Wyo. Stat. Ann. § 6-2-306(a) (LexisNexis 2015)

(first-time sex offenders) and Wyo. Stat. Ann. § 6-2-104 (LexisNexis 2015) (second-degree murder). A commutation is a "reduction in degree or amount of punishment," rather than a complete release. 59 Am. Jur. 2d *Pardon and Parole* § 5 (2012). The governor considers commutation requests upon the recommendation of the WBOP. *See Wyoming Board of Parole Policy and Procedure Manual,* at 30 (effective July 1, 2016). The WBOP considers an offender's personal history and institutional history, among other factors, *Id.* at 32, in light of its mission to consider "public safety, victims and the treatment and control of the offender." *Id.* at 2 (effective July 1, 2015). We set forth the legislative history of these two types of life sentences in *Nicodemus*:

> In 1994, the Wyoming Constitution was amended to add Art. 3, § 53, which empowered the legislature to create a penalty of "life imprisonment without parole" that would not be subject to commutation. Two years later, the legislature enacted a statute which permitted a sentence of "life imprisonment without parole" for specific crimes to be designated by statute. 1996 Wyo. Sess. Laws, ch. 73, § 1; Wyo. Stat. Ann. § 6-10-301(a) (Michie 1997).

> Section Two of the law amended Wyo. Stat. Ann. § 7-13-402(a) to provide that the parole board could grant parole on any sentence except "a sentence of life imprisonment without parole or a life sentence." Section Two of the 1996 act also added the new form of life sentence to the penalties available under Wyo. Stat. Ann. § 6-2-306 for offenders repeatedly convicted of sexual assault. 1996 Wyo. Sess. Laws, ch. 73, § 2. Five years after passage of the 1996 act, the legislature amended the first-degree murder statute, Wyo. Stat. Ann. § 6-2-101, to add life without parole to the existing sentencing options of death and life according to law. 2001 Wyo. Sess. Laws, ch. 96, § 2.

*Id.*, 2014 WY 135, ¶¶ 15-16, 336 P.3d at 675.

[¶12] We conclude that the legislature intended that these two classes of prisoners be treated differently--those sentenced to life according to law with better prospects for eventual release than those sentenced to life without parole. There is a legitimate state interest in providing incentive to prisoners for good behavior that would enhance the possibility of leaving the prison system before the end of their lives. *See Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 470 n.3, 101 S.Ct. 2460, 2467 n.3, 69 L.Ed.2d 158 (1981) (Stevens, J., dissenting) ("[B]ehavior in prison often is molded by [a prisoner's] hope and expectation of securing parole at the earliest time permitted by law."). That hope is furthered by the requirement to comply with the mandatory savings

6

account requirement. We find that there is a rational basis for treating the two categories of life-sentenced prisoners differently with respect to the prisoner savings requirement. We therefore affirm the dismissal of this claim.

### II. Does the Wyoming Department of Corrections' good time policy violate Mr. Bird's equal protection rights by treating similarly situated prisoners differently?

[¶13] Mr. Bird argues that his right to equal protection under the law has also been violated by the WDOC's good time policy, which precludes inmates serving life sentences from receiving good time. Mr. Bird argues that he is similarly situated to prisoners serving a term of years sentence, and the policy which makes him ineligible for good time violates equal protection.

[¶14] Again, we must first determine whether life according to law prisoners are similarly situated to those serving a term of years sentence. In accordance with our analysis above, we look first to the purpose of the policy. The WDOC Policy and Procedure #1.500 (effective July 30, 2015) states:

> It is the policy of the Wyoming Department of Corrections (WDOC) to utilize a process of awarding, removing, and withholding of good time allowances, which serves as an incentive for inmates to abide by the rules of the facility, participate in recommended programs and activities, and pursue other activities and behaviors which improve the likelihood of positive institutional adjustment and successful re-entry to the community. The awarding of good time serves as an incentive and is part of the compensation for program compliance.

The policy is an attempt by the WDOC to ensure that inmates behave well while in prison and participate in activities to ensure that they will do well when they are released. A prisoner who has been sentenced to a term of years will be released from prison upon attaining his maximum term (at the latest) unless he misbehaves or commits further crimes while incarcerated. This is a vested, constitutional right that cannot be denied without due process of law. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 124 S.Ct. 2633, 2646, 159 L.Ed.2d 578 (2004) ("[T]he interest in being free from physical detention by one's own government" "is the most elemental of liberty interests[.]"); *see also Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S.Ct. 1780, 1785, 118 L.Ed.2d 437 (1992) ("A State, pursuant to its police power, may of course imprison convicted criminals for the purposes of deterrence and retribution. But there are constitutional limitations[.]"). Conversely, the only avenue for release of a prisoner sentenced to life according to law is through clemency--either a commutation of his sentence or a pardon--at the discretion of the governor. Wyo. Stat. Ann. § 6-10-301(c). There is no vested right to clemency; it "is a

matter of grace." *Bird v. LeMaitre*, 371 Fed. Appx. 938, 940 (10th Cir. 2010); *see also Solem v. Helm*, 463 U.S. 277, 301, 103 S.Ct. 3001, 3015, 77 L.Ed.2d 637 (1983) ("Commutation . . . is an *ad hoc* exercise of executive clemency. A Governor may commute a sentence at any time for any reason without reference to any standards."). Thus, for purposes of the good time policy, life according to law prisoners are not similarly situated to those serving a term of years. Mr. Bird failed to state a claim for relief, and the district court appropriately dismissed this allegation of Mr. Bird's complaint.

### III. Did the enactment of Wyo. Stat. Ann. § 7-16-205(a)(i) impliedly repeal Wyo. Stat. Ann. § 7-13-402(a)?

[¶15] Mr. Bird argues that by enacting Wyo. Stat. Ann. § 7-16-205(a)(i), the Wyoming legislature impliedly repealed the parole provision of Wyo. Stat. Ann. § 7-13-402(a), which precludes prisoners serving a life sentence from becoming parole eligible. "[O]ur longstanding rule is that repeals by implication are not favored and will not be indulged if there is any other reasonable construction." *In re Estate of Meyer*, 2016 WY 6, ¶ 29, 367 P.3d 629, 638 (Wyo. 2016). A repeal by implication is only appropriate when "the later statute is so repugnant to the earlier one that the two cannot logically stand together, or that the whole subject of the earlier statute is covered by the later one having the same object, clearly intending to prescribe the only rules applicable to the subject." *Id.*

[¶16] First, Mr. Bird argues that there would be no reason to require prisoners serving life according to law to save their earnings in the event that they are released if the legislature did not intend for those prisoners to be parole eligible and subject to release at some future date. As we recognized in *Nicodemus*, while there is little hope that prisoners sentenced to life according to law will ever be parole eligible (through commutation), the plain language of Wyo. Stat. Ann. § 7-16-205(a)(i) demonstrates that "the legislature intended for the Department of Corrections to maintain a fund for that remote contingency." *Id.*, 2014 WY 135, ¶ 19, 336 P.3d at 675-76.

[¶17] Mr. Bird next argues that because life according to law prisoners are treated as similarly situated to prisoners serving a term of years for purposes of Wyo. Stat. Ann. § 7-16-205(a)(i) (the inmate savings provision), they should likewise be treated as similarly situated for purposes of parole eligibility. As we have recognized, prisoners serving life according to law sentences and prisoners serving term of years sentences are not similarly situated, and thus, are not required to be treated equally. "'Equal protection of the laws' does not guarantee equal results for all, or suggest that the law may never draw distinctions between persons in meaningfully dissimilar situations—two possibilities that might themselves generate rather than prevent injustice." *SECSYS, LLC v. Vigil*, 666 F.3d 678, 684 (10th Cir. 2012) (internal citation omitted). As a result, there is no requirement that two groups which may be treated similarly for one purpose must be treated similarly for all purposes.

8

[¶18] The language of Wyo. Stat. Ann. § 7-16-205(a)(i) does not support Mr. Bird's contention that it impliedly repealed Wyo. Stat. Ann. § 7-13-402(a). The two statutory provisions are not repugnant to one another, and both can operate independently without interference with the other. Moreover, the two statutes are aimed at different subjects-- one covering the requirement of inmate savings accounts and the other governing parole-eligibility. Thus, we find no repeal by implication and affirm the district court's dismissal of this claim.

## IV. Did the Wyoming Board of Parole violate the doctrine of separation of powers by enacting policies governing the commutation application procedure?

[¶19] Mr. Bird argues that the WBOP enacted policies governing commutation applications in violation of the separation of powers doctrine. He asserts that the Wyoming Constitution gives the legislature the exclusive power to govern the procedure required for commutations, and the WBOP usurped this power.

[¶20] The constitutional provision which Mr. Bird cites states:

> The governor shall have power to remit fines and forfeitures, to grant reprieves, commutations and pardons after conviction, for all offenses except treason and cases of impeachment; but the legislature may by law regulate the manner in which the remission of fines, pardons, commutations and reprieves may be applied for.

Wyo. Const. art. 4, § 5. Mr. Bird seems to argue that by permitting the WBOP to enact policies governing the application process for commutations, the legislature has impermissibly delegated its constitutional duty to enact legislation governing the process. The United States Supreme Court discussed the principle of delegation in *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989):

> The nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of Government. . . . [W]e long have insisted that "the integrity and maintenance of the system of government ordained by the Constitution" mandate that Congress generally cannot delegate its legislative power to another Branch. *Field v. Clark*, 143 U.S. 649, 692, 12 S.Ct. 495, 504, 36 L.Ed. 294 (1892). We also have recognized, however, that the separation-of-powers principle, and the nondelegation doctrine in particular, do not prevent Congress from obtaining the assistance of its coordinate Branches. . . .

9

[O]ur jurisprudence has been driven by a practical understanding that in our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives. "The Constitution has never been regarded as denying to the Congress the necessary resources of flexibility and practicality, which will enable it to perform its function." Accordingly, this Court has deemed it "constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority."

*Id.*, 488 U.S. at 371-73, 109 S.Ct. at 654-55 (citations omitted). We apply this analysis to our state constitution and the state legislature.

[¶21]   In this case, the legislature clearly delineated the general policy, the public agency, and the boundaries of the delegated authority by permitting the WBOP to "make recommendations to the governor to grant commutations of sentences and review inmate matters," Wyo. Stat. Ann. § 7-13-401(f) (LexisNexis 2016 Supp.), and to "adopt reasonable rules and regulations necessary to carry out the functions assigned," Wyo. Stat. Ann. § 7-13-402(e) (LexisNexis 2015).   As a result, the legislature did not impermissibly delegate a function it was required to perform under the Wyoming Constitution, and there is no separation of powers violation.   Dismissal of this claim is affirmed.

## V.   Did the Wyoming Board of Parole violate Mr. Bird's due process rights by amending the commutation application procedure?

[¶22]   Mr. Bird argues that he was deprived of due process when the WBOP amended the procedure governing the application process for commutations.  However, under no set of facts can Mr. Bird demonstrate that he has been deprived of a constitutionally-protected liberty or property interest, which is a threshold requirement for a due process claim. *Crofts v. State ex rel. Dep't of Game & Fish*, 2016 WY 4, ¶ 27, 367 P.3d 619, 626 (Wyo. 2016) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1492, 84 L.Ed.2d 494 (1985)).  "[A]n inmate has no constitutional or inherent right to commutation of his sentence." *Dumschat*, 452 U.S. at 464, 101 S.Ct. at 2464 (internal quotation marks and citation omitted); *see also Bird*, 371 Fed. Appx. at 940 ("[C]ommutation is a matter of grace and not a right[.]").   Thus, the district court appropriately dismissed Mr. Bird's due process claim.

## VI. Did the Wyoming Board of Parole's amendment to the commutation application procedure violate Mr. Bird's constitutional protection against ex post facto laws?

[¶23] Both the Wyoming Constitution and the United States Constitution prohibit the passage of *ex post facto* laws. Wyo. Const. art.1, § 35; U.S. Const. art. 1, § 10. An *ex post facto* law is one "which makes more burdensome the punishment for a crime, after its commission[.]" *Smith v. State*, 2009 WY 2, ¶ 55, 199 P.3d 1052, 1068 (Wyo. 2009) (quoting *Dobbert v. Florida*, 432 U.S. 282, 292, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977)). Mr. Bird argues that the amendment of the WBOP policy governing the application for commutations made his sentence more burdensome because he can now only apply for a commutation every five years, instead of every year.

[¶24] In determining whether a law makes a punishment more burdensome, "we must determine whether [the law] produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." *California Dep't of Corrections v. Morales*, 514 U.S. 499, 509, 115 S.Ct. 1597, 1603, 131 L.Ed.2d 588 (1995). If a law "creates only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes, [then] such conjectural effects are insufficient" to implicate *ex post facto* concerns. *Id.* Because commutations are wholly discretionary and unpredictable, it is nearly impossible to demonstrate a "significant risk" that Mr. Bird would be denied a commutation that he might otherwise have received if the policy had not been amended. *Snodgrass v. Robinson*, 512 F.3d 999, 1002-03 (8th Cir. 2008); *see also Lewis-El v. Sampson*, 649 F.3d 423, 426-27 (6th Cir. 2011) (It would be nearly impossible to demonstrate that a change in commutation procedure would present a significant risk of lengthening the amount of time served "considering that the decision to commute a prisoner's sentence is so tied to the personal predilections of the person occupying the governor's office."). The district court therefore did not err when it dismissed this claim in Mr. Bird's complaint.

## *CONCLUSION*

[¶25] There is a legitimate state interest in treating prisoners differently with respect to Wyo. Stat. Ann. § 7-16-205(a)(i). The Wyoming Department of Corrections' good time policy does not violate equal protection because prisoners serving life according to law and prisoners serving a term of years sentence are not similarly situated. The legislature's enactment of Wyo. Stat. Ann. § 7-16-205(a)(i) did not impliedly repeal Wyo. Stat. Ann. § 7-13-402(a). The Wyoming Board of Parole did not violate the separation of powers doctrine by enacting policies governing the procedure for commutation applications. Mr. Bird's due process rights were not violated by the amendment to the policy governing the commutation application procedure, and the amendment did not constitute an *ex post facto* law. Thus we affirm the district court's dismissal of the complaint.