# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1463

_____

Sherryl Ann Snodgrass,

        Plaintiff-Appellant,

Juliann Lawrence,

        Plaintiff,

        v.

Elizabeth Robinson, Chair of the Iowa
Board of Parole, in her individual and
official capacity; Karen Muelhaupt,
Vice Chair of the Iowa Board of Parole,
in her individual and official capacity;
Richard S. Boardwell, Member, Iowa
Board of Parole, in his individual and
official capacity; Curtis S. Jenkins,
Member, Iowa Board of Parole, in his
individual and official capacity; Barbara
Binnie, Member, Iowa Board of Parole,
in her individual and official capacity;
Iowa Board of Parole; and Chester J.
Culver, Governor of Iowa,

        Defendants-Appellees.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the
Southern District of Iowa.

_____

Submitted: November 1, 2007
Filed: January 11, 2008

_____

Before MELLOY, COLLOTON, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

State prisoner Sherryl Ann Snodgrass filed suit alleging that the Iowa Board of Parole ("the Board"), the Board's members, and the governor of Iowa violated her constitutional rights by applying laws and regulations governing sentence commutation requests even though the laws were passed after her conviction. She alleges these acts violated the ex post facto clause of the United States Constitution and caused a deprivation of her Fifth and Fourteenth Amendment due process rights. U.S. Const. Art. I, § 10, cl. 1; Amend. V; Amend. XIV, § 1. The district court[1] granted a motion to dismiss, finding commutation by the governor in Iowa to be an act of grace unrestricted by substantive laws or rules. The district court concluded that the speculative possibility of a lost opportunity for a commutation could not serve as the basis for a state's ex post facto violation and that Snodgrass had no liberty interest in an act of grace by the governor. Accordingly, the district court held Snodgrass had not stated a cause of action for any constitutional violations. We affirm.

I. Background

Snodgrass and her lover were convicted of first degree murder for the 1981 slaying of Snodgrass's husband. The details of the offense and the state court proceedings are described in State v. Snodgrass, 346 N.W.2d 472 (Iowa 1984). First degree murder is a class A felony in Iowa, Iowa Code § 707.2 (1981 and 2007), and carries a mandatory life sentence. Id. § 902.1. Now, as it did in 1981, Iowa precludes a grant of parole to a person serving a life sentence. Id. In other words, a life sentence in Iowa is a life sentence without the possibility of parole, absent the governor's commutation of the sentence to a term of years. Id. (providing that if the governor commutes a prisoner's life sentence to a term of years, the prisoner becomes eligible for parole).

---

[1]The Honorable Ross A. Walters, United States Magistrate Judge for the Southern District of Iowa, sitting by consent of the parties in accordance with 28 U.S.C. § 636(c).

The Iowa constitution grants the governor the power to commute sentences, "subject to such regulations as may be provided by law." Iowa Const. Art. IV, § 16. Iowa, however, has passed no substantive restrictions on the governor's ability to commute sentences, and, in fact, the Iowa Code provides, "The power of the Governor . . . to grant a . . . commutation of sentence . . . shall not be impaired." Iowa Code § 914.1 (2007). For the purpose of our analysis, then, we must view the Iowa governor's power to commute sentences as substantively unfettered. Lyon v. State, 404 N.W.2d 580, 583 (Iowa Ct. App. 1987) ("No substantive predicates are placed upon the governor's discretion in granting a commutation of sentence.").

Although the governor's authority to commute sentences is not restricted by any substantive laws, the Iowa Code does provide that the Board shall review certain prisoners' files, interview prisoners, and make commutation recommendations to the governor. Iowa Code § 902.2 (2007). At the time of Snodgrass's offense and conviction, the Iowa Code provided that the Board was to interview class A felons within five years of their incarceration "and regularly thereafter." Iowa Code § 902.2 (1981). Applicable regulations added detail to this general requirement, providing for interviews of class A felons at intervals of five, ten, thirteen, and fifteen years post-confinement, and annually thereafter. Iowa Admin. Code § 205-14.2(1) (902) (1989).

In 1995, well after Snodgrass's 1981 conviction, the Iowa legislature amended Iowa Code § 902.2 to provide that a Class A felon serving a life sentence could apply to the governor for commutation "no more frequently than once every ten years." Iowa Code § 902.2 (1995). This amended code section also provides that the governor is to forward such applications to the Board to enable the Board to make recommendations. Id. Finally, the Board's recommendations have never been binding on the governor, and section 902.2 in no way restricts the power of the Director of the Iowa Department of Corrections, who "may make a request to the governor that a person's sentence be commuted to a term of years at any time." Iowa Code § 902.2 (2007).

In support of her claims, Snodgrass alleges additional facts regarding the practices of the Board, the history of her applications with the Board, and the governor's denial of a recent commutation application from Snodgrass. She argues on appeal that the district court improperly granted the state's motion to dismiss and failed to accept the facts alleged in her complaint and the reasonable inferences from those facts. We need not delve into her factual allegations. At the end of the day, any form of relief for Snodgrass depends on a speculative, unpredictable, and wholly discretionary grant of clemency by the governor. We agree with the district court that Snodgrass cannot state an ex post facto or due process violation based on the application of the challenged laws.

II.    Ex Post Facto

"[T]he focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' nor . . . on whether an amendment affects a prisoner's '*opportunity* to take advantage of provisions for early release,' but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 506 n. 3 (1995) (citation omitted). Simply put, not every change in the law raises ex post facto concerns. The changed law must create a "significant risk" of increasing the offender's punishment. See Garner v. Jones, 529 U.S. 244, 255 (2000) (announcing the rule that, to prove an ex post facto violation related to changes in *parole* procedures, an inmate must, "show that as applied to his own sentence the law created a *significant risk* of increasing his punishment") (emphasis added).

Here, Snodgrass's claim does not hinge on the availability of parole, but on the availability of a commutation—the only means by which she might become eligible for parole.[2] Whereas changes to parole procedures may, in some circumstances raise

---

[2]It is difficult to speak generically about differences between parole and commutation, and it is necessary to focus specifically on the law at issue in a given

ex post facto concerns, changes to Iowa's procedures for commutation applications do not. See id. at 250 ("Retroactive changes in laws governing parole of prisoners, in some instances, may be violative of [the ex post facto clause]."). This is because most parole procedures are distinct from the highly personal, policy oriented, and legislatively unchecked authority of the Iowa governor to grant sentence commutations.

The unpredictability of a wholly discretionary grant of commutation in Iowa precludes Snodgrass from demonstrating that the changes in Iowa's law raise a "significant risk" that she will be denied a commutation she otherwise would have received. As such, she cannot demonstrate there is a significant risk her punishment will be longer than it would have been under former Iowa Code Section 902.2. Accordingly, she cannot make out an ex post facto claim. Morales, 514 U.S. at 509 (stating that where the changed law gives rise to "only the most speculative and attenuated possibility of . . . increasing the measure of punishment . . . such conjectural effects are insufficient under any threshold we might establish under the ex post facto clause").

---

case. This is because each state may have slightly different degrees of discretion or guidance imposed on its parole board's or governor's exercise of power, and the relative degree of discretion or guidance factors largely into determining whether a change in a relevant law create a significant risk of increasing a defendant's punishment. In Garner, for example, the Court described a Georgia parole board as holding "broad discretion." Garner, 529 U.S. at 253. That discretion was not limitless, however, and the controlling state statute provided guidance for the parole board's consideration, repeatedly stating what factors the parole board "'shall'" and "'shall not'" consider. Id. at 252-53 (quoting Ga. Code Ann. § 42-9-42(c)). The Court ultimately remanded the case for further development because the record was not sufficient to conduct "a more rigorous analysis of the level of risk [of increased punishment] created by the change in law." Id. at 255. In the present case, there are no statutory "shalls" restricting the Iowa governor's discretion or providing benchmarks by which a reviewing court might conduct an analysis of the likelihood that changes in the law will create a significant risk of increased punishment.

II.  Due Process

To state a due process violation, Snodgrass must first identify a protected liberty interest.  She asserts a liberty interest in familial association and claims that the changed law will increase her sentence thereby depriving her of contact with her family.  The proper focus, however, is not on whether Snodgrass has some liberty interest that is affected by her continued incarceration.  Her criminal acts and lawful conviction caused her incarceration and extinguished or limited countless liberty interests.  Those liberty interests were removed under the myriad procedural protections attendant to arrest and trial.  The proper focus in this case is on whether she has a liberty interest in the grant of a sentence commutation from the Iowa governor—the only action that can in any manner shorten her term of incarceration.

On this question, the law is clear: "no liberty interest . . . is created unless the state statute or regulation involved uses mandatory language and imposes substantive limits on the discretion of state officials."  Bagley v. Rogerson, 5 F.3d 325, 328-29 (8th Cir. 1993); see also, Marshall v. Mitchell, 57 F.3d 671, 672-73 (8th Cir. 1995) (holding that a Missouri parole scheme that gives officials "virtually unlimited discretion" to grant parole does "not create a liberty interest protected by the due process clause of the Fourteenth Amendment").  Likewise, the Supreme Court has refused to recognize a prisoner's liberty interest in discretionary commutations based on a statute that has "no definitions, no criteria, and no mandated shalls."  Conn. Bd. of Pardons v. Dumschat, 452 U.S. 458, 466 (1981) (citations omitted); see id. at 464 (interpreting a Connecticut statute and holding that "an inmate has no constitutional or inherent right to commutation of his sentence.").  Without a liberty interest in a commutation, there can be no due process violation related to changes in the procedure surrounding such a commutation.  See id. at 463 ("Plainly, however, the underlying right must have come into existence before it can trigger due process protection.").  As we stated in Bagley, " If a state law gives . . . the right to a certain outcome in the event of the occurrence of certain facts, [there is] a right, by virtue of the Fourteenth Amendment, to whatever process is due in connection with the

determination of whether those facts exist." <u>Bagley</u>, 5 F.3d at 328. Here, the unfettered discretion vested in the governor gives no prisoner a "right to a certain outcome in the event of the occurrence of certain fact." As such, Iowa prisoners have no liberty interest in commutations, just like the Missouri prisoners had no liberty interest in the grants of parole in the scheme examined in <u>Marshall</u>.

To the extent Snodgrass argues her asserted liberty interest is an absolute right to interviews with the Board as frequently as was permitted under Iowa law at the time of her offense, her arguments are misplaced. Such an argument confuses the liberty interested to be protected with the procedure provided for its protection.

We affirm the judgment of the district court.

_____