RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0208p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

KEITH LEWIS-EL,

　　　　　　*Plaintiff-Appellant,*

　　　*v.*

BARBARA SAMPSON, Chairperson of the
Michigan Parole Board, et al.,

　　　　　　*Defendants-Appellees.*

No. 09-1091

_____

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 08-15060—George C. Steeh, District Judge.

Argued: July 21, 2011

Decided and Filed: August 10, 2011

Before: COLE and ROGERS, Circuit Judges; SARGUS, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Eric M. Goldstein, WINSTON & STRAWN LLP, Washington, D.C., for
Appellant.　Kevin R. Himebaugh, OFFICE OF THE MICHIGAN ATTORNEY
GENERAL, Lansing, Michigan, for Appellees. **ON BRIEF:** Eric M. Goldstein, Gene
C. Schaerr, WINSTON & STRAWN LLP, Washington, D.C., for Appellant.　Kevin R.
Himebaugh, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing,
Michigan, for Appellees.

_____

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of
Ohio, sitting by designation.

—————————

**OPINION**

—————————

ROGERS, Circuit Judge.  Plaintiff Keith Lewis-El is currently serving a non-parolable life sentence in a Michigan prison.  He appeals the district court's summary dismissal of his 42 U.S.C. § 1983 action against members of the Michigan Parole Board.  Lewis-El claims that the board changed its policies in regard to its commutation procedures in a manner that violates the Ex Post Facto Clause of the United States Constitution.  Commutation is left entirely to the discretion of the governor of Michigan.  Moreover, Lewis-El has not alleged facts sufficient to show a significant risk of an increased prison term because of the changes in Michigan's commutation policies.  The district court accordingly properly dismissed Lewis-El's suit.

A Michigan jury found Lewis-El guilty of first-degree felony murder and sentenced him to life without the possibility of parole on January 11, 1983.  Since that time, he has been serving his life sentence in Michigan.  Although Lewis-El's sentence makes him permanently ineligible for parole, his sentence can be commuted by the governor of Michigan.  The Michigan Parole Board has the power to review a prisoner's case and to recommend to the governor that a prisoner's sentence be commuted.  *See* Mich. Comp. Laws § 791.244.  Lewis-El claims that, upon his entry into prison, he was screened by Michigan Department of Corrections (MDOC) staff pursuant to the *Guidelines for Commutation Recommendations* in MDOC Policy Directive PD-DWA-45-12, and that these guidelines, known as "the grid," were used to determine when he would be eligible to be recommended by the parole board for commutation.  Lewis-El alleges that he received a score of twenty-seven from the grid, and that he was told that this meant that he would be required to serve twenty-seven years of his sentence before the parole board would consider recommending to the governor that Lewis-El's sentence be commuted.

During Lewis-El's incarceration, the MDOC altered the guidelines it uses for determining whether to recommend commutation.  When Lewis-El began his life

sentence, the policies set out the guidelines for when the parole board would consider recommending commutation, which applied to "residents serving life or long-indeterminate sentences who are not eligible for special parole consideration or release . . . and who are serving for offenses of homicide, robbery, or sexual assault." MDOC Policy Directive PD-DWA-12 (effective September 1, 1981). The policies provided that every prisoner eligible for commutation would be scored based on his offense and prior criminal record and that this score would be applied to a grid "to determine the number of years to be served before commutation may be recommended." *Id.* Lewis-El contends that the parole board generally recommended commutation upon expiration of the number of years laid out by the grid, and Lewis-El claims that he was told that the governor generally followed the parole board's recommendations.

The current policies no longer use the grid system under which Lewis-El claims that he was assessed upon his entry in prison. Instead, in regard to prisoners serving non-parolable life sentences today, the policy directives state only that these prisoners can be considered for reprieve, commutation, or pardon and set out a schedule for interviewing these prisoners to determine if they should be granted any of these forms of relief. MDOC Policy Directive 06.05.104(L) (effective Aug. 15, 2005). The policies provide for an interview after the prisoner has served ten years, subsequent interviews conducted at the discretion of the parole board, and file reviews every five years after the initial interview. *Id.* Both the former and current policies give the parole board complete discretion in deciding whether to recommend commutation of a prisoner's sentence to the governor.

Lewis-El received either an interview or review of his case by the parole board in 1992, 1997, 2002, and 2007, but the board did not recommend that his sentence be commuted on any of these occasions. According to Lewis-El, his case will be up for review again in 2012, and if the grid were still applied, he would likely be recommended for commutation since it will be past the twenty-seven year date he was given upon entry. Lewis-El argues that he should have been considered for commutation in 2010 according to his grid score. Lewis-El further alleges that because the parole board now

exercises a "life-means-life" policy, it will never recommend his case for commutation. Lewis-El states that "by rescinding the Grid and removing the mandatory interview requirement, the Board has foreclosed any possibility Lewis-El-El has of even being considered. . . . Lewis-El-El can be reasonably assured that the Board will never interview him again, which means it will never consider transmitting a commutation recommendation to the Governor."

Lewis-El filed this suit against individual members of the Michigan Parole Board in their official capacities in federal district court on December 8, 2008, alleging, among other things,[1] that the fact that current policies no longer employ the grid system violates the Ex Post Facto Clause and that he is entitled to relief pursuant to 42 U.S.C. § 1983. The district court dismissed Lewis-El's case sua sponte pursuant to 28 U.S.C. § 1915(e) on December 16, 2008, holding that "the rescission of PD-DWA-45.12 does not violate the Ex Post Facto Clause." The court explained:

> Internal operating memoranda and policy directives of the Michigan Parole Board and the Michigan Department of Corrections for determining parole eligibility are not laws subject to the Ex Post Facto Clause, "because they are merely flexible guideposts," that assist the parole board in exercising its discretion as to whether to grant parole to an inmate. . . .
>
> Moreover, even if a change in parole procedures might conceivably violate the Ex Post Facto Clause, retroactive changes in policies regarding the commutation of non-parolable life sentences does [sic] not violate the Ex Post Facto Clause. This is because most parole procedures "are distinct from the highly personal, policy oriented, and legislatively unchecked authority" of Michigan's governor to grant sentence commutations.

---

[1] Lewis-El challenged other aspects of changes in the commutation policies in his original complaint—including the shift from a mandatory, periodic interview schedule to an initial 10-year interview, with subsequent interviews at the Board's discretion—but he abandons these arguments on appeal because he recognizes that our opinion in *Foster v. Booker*, 595 F.3d 353 (6th Cir. 2010), resolved these other issues in the parole board's favor.

(Citations omitted.)  Thus, the district court found that Lewis-El had not stated a claim upon which relief could be granted, and the court dismissed his complaint.  Lewis-El now appeals this ruling.[2]

The district court did not err in summarily dismissing Lewis-El's ex post facto claim.  As an initial matter, the members of the parole board argue for the first time on appeal that Lewis-El's ex post facto claim is not ripe for review.  This is not the case.  We need not decide if the case was ripe at the time that it was brought, because it is clearly ripe now.  Although Lewis-El filed his complaint in 2008, two years shy of the date on which he claims that he was entitled to the parole board's consideration for commutation, that 2010 date has apparently come and gone without Lewis-El's receiving an interview or a recommendation that his sentence be commuted.

Because Lewis-El's complaint fails to set forth any facts that would entitle him to relief under 42 U.S.C. § 1983 for an ex post facto violation, dismissal of this case pursuant to § 1915(e) was proper.  Lewis-El's release is not affected by Michigan's parole provisions, but instead by its commutation provisions.  The Michigan Constitution gives the governor the "power to grant reprieves, commutations and pardons after convictions for all offenses . . . upon such conditions and limitations as he may direct, subject to procedures and regulations prescribed by law."  Mich. Const. Art. V, § 14.  Michigan law provides for parole board members to interview prisoners serving non-parolable life sentences for first-degree murder after they have served ten years in prison, in order to determine whether the parole board should recommend to the governor that the prisoner's sentence be commuted.  Mich. Comp. Laws § 791.244(1), (2).  Michigan law puts no further restrictions on the parole board's discretion in recommending commutation or the governor's discretion in granting it, and it does not appear that any such restrictions on discretion existed during Lewis-El's incarceration.  Though Lewis-El asserts that past provisions outlined different procedures undertaken in determining when to review a prisoner's file for commutation,

---

[2]Lewis-El also filed a motion for rehearing and reconsideration with the district court in regard to this claim, but that motion was denied.

he never contends that those provisions limited either body's discretion in its decision-making.

Counsel for Lewis-El at oral argument agreed that there would be no Ex Post Facto Clause violation if a newly elected governor of Michigan announced a determination not to commute the sentences of any murderers during the governor's term. If so, it could not be an ex post facto violation for the same governor to establish some new, highly restrictive procedural hurdles to such commutations. And if such a change in policy comports with the Ex Post Facto Clause, it follows inexorably that Lewis-El has not stated a claim in this case. This reasoning is by itself sufficient to support dismissal of Lewis-El's claim.

Assuming for the sake of argument that the changes in commutation procedures are subject to the same ex post facto test as changes in parole procedures—a generous assumption—the changes do not meet that test. According to the Supreme Court in *Garner v. Jones*, 529 U.S. 244 (2000), "the relevant inquiry . . . is not whether the challenged [provision] is 'law' or whether the guidelines present a significant risk of increasing the plaintiff's maximum penalty, but rather whether the new guidelines present a significant risk of increasing the plaintiff's amount of time actually served," *Michael v. Ghee*, 498 F.3d 372, 383 (6th Cir. 2007); *see Garner*, 529 U.S. at 255. Because of the fundamentally discretionary nature of gubernatorial commutation in Michigan, that test cannot be met.

This conclusion is supported by our recent holding regarding changes in Michigan's parole provisions, which were revised in conjunction with the revisions to its commutation provisions. *See Foster v. Booker*, 595 F.3d 353 (6th Cir. 2010). In *Foster*, we reversed the district court's grant of summary judgment for the plaintiffs, based on the Ex Post Facto Clause, reasoning that they had "not shown that they face[d] a significant risk of increased punishment as a result of the challenged statutory changes to Michigan's parole process rather than as a result of the new Board's legitimate exercise of discretion in a way that results in fewer paroles." *Id.* at 361. We explained that "there is no way for this court to determine whether any decrease in the parole rate

or any increase in the average years served is due to the challenged statutory changes to the parole process or to the Board's stricter exercise of discretion." *Id.* at 365. Without such a determination, there could not be an ex post facto violation.

What was true in *Foster* is doubly true when dealing with Michigan's commutation provisions as opposed to its parole provisions. The decision to commute a prisoner's sentence includes two layers of discretion: first, the parole board has discretion in its decision to recommend commutation; and second, the governor has discretion in his or her decision to commute the sentence. Lewis-El has failed to set forth any facts tending to show that he faces a significant risk of increased punishment *because of* Michigan's changed commutation provisions, or, specifically, because Michigan no longer adheres to the grid. In fact, this would be almost impossible to demonstrate considering that the decision to commute a prisoner's sentence is so tied to the personal predilections of the person occupying the governor's office. The Eighth Circuit in *Snodgrass v. Robinson*, 512 F.3d 999, 1002 (8th Cir. 2008), for instance, described the governor of Iowa's unlimited discretion in commuting a prisoner's sentence as a "highly personal, policy oriented, and legislatively unchecked authority." In his complaint, Lewis-El merely puts forth statistics that he claims demonstrate the decreased likelihood of his sentence being commuted. Even if we accept these statistics as true, Lewis-El alleges no facts sufficient to show that this decreased likelihood is on account of the parole board's abandoning the grid, as would be required to make out his ex post facto claim.

Our conclusion is further supported by the Eighth Circuit's thoughtful analysis in *Snodgrass*. That case dealt with a similar challenge to Iowa's commutation procedures, which are much like Michigan's. *Id.* at 1000-01. When Snodgrass was convicted, Iowa law and parole board regulations called for interviewing felons like Snodgrass five years after incarceration, then at ten, thirteen and fifteen years post-confinement, and then annually thereafter. *Id.* at 1001. However, during Snodgrass's incarceration, these provisions changed, restricting prisoners to applying for commutation no more frequently than once every ten years. The Eighth Circuit found

no ex post facto violation from this change, stating that "[t]he unpredictability of a wholly discretionary grant of commutation . . . precludes Snodgrass from demonstrating that the changes in Iowa's law raise a 'significant risk' that she will be denied a commutation she otherwise would have received," and thus "she cannot demonstrate that there is a significant risk her punishment will be longer." *Id.* at 1002.

Lewis-El argues that *Snodgrass* is distinguishable from his case because it involves the governor's discretion in the grant of commutation itself and not the right to a parole board review. But parole board review is part of the process leading to the exercise of the governor's unfettered discretion. The distinction is therefore one without a difference. Moreover, like Lewis-El, Snodgrass was challenging a change in the review procedures for commutations, which decreased the frequency of interviews with the parole board. As in *Snodgrass*, Lewis-El has failed to allege facts tending to show that it is the change in procedures, and not the discretion of the board and governor, that is affecting his sentence.

The judgment of the district court is affirmed.